**AVOYELLES PUBLISHING**
**CO. and Randy Decuir**

v.

**Richard IEYOUB, Michael J. Johnson,**
**and McKinley Keller**

**No. CIV. A. 00–0486.**

United States District Court,
W.D. Louisiana,
Alexandria Division.

May 12, 2000.

---

Rodney M Rabalais, Office of Rodney M Rabalais, Marksville, LA, John S Baker, Baton Rouge, LA, for Avoyelles Publishing Co, Randy Decuir, plaintiffs.

Michael D Skinner, Skinner & Stipe, Lafayette, LA, for Richard Ieyoub, defendant.

Michael J Johnson, Cottonport, LA, pro se.

Michael J Johnson, Cottonport, LA, for McKinley Keller, defendant.

J. Michael Percy, Susan C. Segura, Percy smith et al., Alexandria, LA, Peter B. Swann, David J. Bodney, Steptoe & Johnson, Phoenix, AZ, for Central Newspapers, Inc., movant.

## MEMORANDUM OPINION

LITTLE, Chief Judge.

Before the court are plaintiffs' motion for a preliminary injunction and consolidated trial on the merits and defendant Ieyoub's motion to dismiss the declaratory judgment action. For the following reasons, this court denies the plaintiffs' motion and grants the defendant's motion.

### FACTUAL AND PROCEDURAL BACKGROUND

The following facts were stipulated by the parties in advance of the hearing on the merits:

Avoyelles [Publishing Company] owns the Avoyelles Journal, a weekly newspaper printed and circulated in Avoyelles Parish[.] Decuir is the editor of the Avoyelles Journal. Ieyoub is the Attorney General of Louisiana. Keller is an Avoyelles Parish Police Juror. Johnson is a former District Judge for Avoyelles Parish. Carol Aymond, Jr. (Aymond) is an attorney who practices law in Bunkie, Avoyelles Parish, Louisiana. Aymond campaigned unsuccessfully against (then) Judge Johnson in 1996 for the district judgeship in Avoyelles Parish. Alphonse "Sez" is a weekly column published in the Avoyelles Journal. On November 6, 1996, Aymond called a press conference at his law office in Bunkie, Avoyelles Parish, Louisiana. Garland Forman attended the press conference as a reporter for the Avoyelles Journal. The general public was invited and persons other than the media attended. At the November 6, 1996 press conference, Aymond played a recording of an alleged conversation between Johnson and Keller and provided a typed transcript of the taped conversation to the reporters and those in attendance, including Forman. Aymond represented to Forman and those in attendance that the tape had been made legally. On November 7, 1996 and November 8, 1996 the Alexandria Daily Town Talk, owned by CNI, printed articles on the press conference in which selected portions of the taped conversation were quoted. On November 10, 1996 the Avoyelles Journal reported on the press conference and essentially quoted the same portions

of the tape printed by the Alexandria Daily Town Talk; in the same issue, the Avoyelles Journal also carried the column "Alphonse Sez" wherein the author commented on the contents of the taped conversations. On November 25, 1996 Aymond was arrested on a felony charge for allegedly violating the Act, and more specifically, LSA–R.S. 15:1303. The arrest resulted from criminal complaints filed by Johnson and Keller with the Sheriff of Avoyelles Parish. No criminal charges were ever filed against Johnson and Keller as a result of the contents of the taped conversations. The Avoyelles Parish District Attorney recused himself from handling the criminal prosecution of Aymond and transferred the charges to the Louisiana Attorney General, who assumed responsibility therefore. On December 2, 1996 Johnson and Keller sued Aymond, Avoyelles, Decuir, John Doe (Alphonse), and CNI, owner of the Alexandria Daily Town Talk in State District Court. Johnson sought damages from Decuir and Avoyelles under the Act for publishing the report on the news conference, defamation, and for refusing to publish political ads. Keller sought damages for defamation and violation of the Act. Johnson later dismissed his claims for defamation and the refusal to publish political ads and Keller later dismissed his claim for defamation, leaving only their claims for violation of the Act pending in state court. Decuir and Avoyelles claimed in answer to the state court suits that the Act would be unconstitutional under the First Amendment if it were construed to apply to the publication by Avoyelles and Decuir. The Louisiana Attorney General was notified as required by state law of the possible constitutional challenge to the Act and initially chose not to participate in the state court proceedings. At the time the state court actions were filed by Johnson and Keller, on December 2, 1996 Johnson was still a district court judge. Prior to the filing of the state court actions, on November 25, 1996, the Louisiana Supreme Court had ordered Johnson's removal from office for improprieties not involved in this case. The final judgment of the Louisiana Supreme Court did not become effective until December 13, 1996. On April 17, 1997 a subpoena was issued by the Louisiana Attorney General to Forman to appear before a grand jury and produce copies of the recording and/or transcript. The subpoena was issued in the matter entitled, "In Re: A Matter Under Investigation." Forman filed a Motion to Quash the subpoena in state court raising the privilege against self-incrimination, pending a judicial construction of the Act. The Attorney General filed a Motion to Compel Forman to respond to the subpoena. The grand jury did not indict Aymond, Johnson, Keller or any other individuals. In the state court proceeding the district court addressed the act when ruling on Exceptions filed by Aymond and CNI. The District Court denied Aymond's Exception but granted CNI's Exception. Johnson and Keller appealed the District Court's grant of CNI's Exception to the Third Circuit which reversed the trial court on April 1, 1998. *Johnson v. Aymond,* 709 So.2d 1072 (La.App. 3rd Cir.1998). CNI applied for writs to the Louisiana Supreme Court which denied the application on June 19, 1998. 720 So.2d 1214 (La.1998). Decuir and Avoyelles were not parties to the Exception, the appeal, or the application for writs. Decuir and Avoyelles filed Motions for Summary Judgment in the state court proceedings. The trial court granted the Motions, without written reasons, but referred to the written reasons issued on CNI's Exception. Johnson and Keller appealed the grant of the Motions for Summary Judgment directly to the Louisiana Supreme Court. The Louisiana Supreme Court transferred the matters to the Louisiana Third Circuit Court of Appeal finding that an "independent review of the record reveals

that the trial court's judgment never rendered the Act unconstitutional." The Court of Appeal then reversed the Judgments granting Avoyelles and Decuir's Motions for Summary Judgment in an opinion dated December 23, 1998. The Court of Appeal stated that the Act does not violate the First Amendment. Decuir and Avoyelles filed a writ to the Louisiana Supreme Court seeking review of the Court of Appeal's opinion. CNI also filed a writ although it was not a party to the appeal. The Louisiana Supreme Court denied both applications for writs. CNI also filed a writ to the United States Supreme Court seeking review of the Court of Appeal's opinion; the writ was denied by the United States Supreme Court without comment. Ieyoub has now filed Requests for Notice with the Clerk of Court in the state court proceedings on December 27, 1999 and January 18, 2000. Johnson has indicated to individuals in Avoyelles Parish that he may again seek public office. Keller continues in his position as a police juror in Avoyelles Parish. Keller was re-elected in 1999. Keller and Johnson will file criminal charges against plaintiffs in state court and sue plaintiffs for damages if plaintiffs republish or attempt to introduce the recordings and/or transcripts into evidence in this proceeding or the state court proceedings. A hearing is scheduled in the state court proceedings on an Exception filed by CNI and Aymond raising the constitutionality of the Act.

PRETRIAL STIPULATIONS at 2–5 (paragraph marks omitted). Plaintiffs moved this court for a preliminary injunction and consolidation of the trial on the merits on 10 March 2000. Defendant Ieyoub submitted a motion to dismiss on 14 April 2000. This court held a hearing in this matter on 20 April 2000. All parties indicated that they had no objection to plaintiffs' motion for consolidation of trial on the merits and that this court's decision could be made on the briefs without need for testimony. Subsequent to this hearing, the state court held a hearing on 5 May 2000 regarding the aforementioned exception on constitutionality filed by Central Newspapers Inc. ("CNI"). The state court overruled the exception.

## LAW AND APPLICATION

■ By virtue of the *Rooker–Feldman* doctrine, federal courts lack jurisdiction to entertain collateral attacks on state judgments.[1] *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia, Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The United States Supreme Court is the only federal court permitted to review state court decisions.[2] *See* 28 U.S.C. § 1257(a) ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari ... where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties or laws of the United States[.]"). The Seventh Circuit has provided a helpful illustration of the mechanics of the *Rooker–Feldman* doctrine:

> If Dickie had moved first for his litigation expenses in the Wisconsin circuit court, and only after his motion was denied, had filed suit in federal district court, federal jurisdiction would have been barred by the *Rooker–Feldman* doctrine. For he would in effect have been asking the federal court to overturn the decision of the Wisconsin circuit court, and the U.S. Supreme Court is the only federal court that has jurisdiction to review state court decisions, except by way of habeas corpus. But

---

1. Res judicata provides a separate avenue to protect state court judgments. The preclusion doctrines are not implicated in this case.

2. The power of lower federal courts to award habeas relief is of course an exception to this rule. *See* 28 U.S.C. § 2254.

when separate cases proceed in parallel in state and federal court, a state court judgment is conclusive on the federal court only by operation of res judicata. *Dickie v. City of Tomah,* 999 F.2d 252, 254 (7th Cir.1993) (citations omitted). *Rooker–Feldman* is a jurisdictional doctrine and, as such, it is of little consequence that only defendant Ieyoub raised it in his briefs.[3] This court must *sua sponte* resolve this jurisdictional issue as to all defendants before it can go any further. *See Ritter v. Ross,* 992 F.2d 750, 752 (7th Cir.), *cert. denied,* 510 U.S. 1046, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994).

■ The instant complaint was filed in this court after the Louisiana Third Circuit found that the Louisiana wiretapping statute was constitutional as applied to the plaintiffs' alleged conduct. It is true, as the plaintiffs argue, that no final judgment has been reached in the state court matter and that § 1257 applies only to final judgments and decrees. As the D.C. Circuit has responded to a variant of this line of attack,

> Even if the suspension were not final for purposes of 28 U.S.C. § 1257, the district court would have lacked jurisdiction. We cannot imagine how one could reconcile *Feldman*'s reasoning, based as it is on allowing state courts to arrive at decisions free from collateral federal attack, with the idea that the district court would be free to review Richardson's suspension so long as the decision was *interlocutory.* Indeed other circuits have persuasively concluded that the boundaries of § 1257's grant of Supreme Court jurisdiction do not prevent the application of *Rooker–Feldman* to the

final decisions of *lower* state courts, or to state courts' interlocutory decisions. *Richardson v. District Columbia Court of Appeals,* 83 F.3d 1513, 1515 (D.C.Cir. 1996). Our own Fifth Circuit has noted that "[w]e hold no warrant to review even final judgments of state courts, let alone those which never take final effect because they remain subject to revision in the state appellate system." *Hale v. Harney,* 786 F.2d 688, 691 (5th Cir.1986). Simply put, *Rooker–Feldman* bars *review* of *any* state court decision unless by way of habeas corpus.

The instant case implicates the *Rooker–Feldman* anti-review doctrine in a number of ways. The plaintiffs do not ask this court to resolve a case or controversy that exists independently of the Third Circuit ruling.[4] *See Garry v. Geils,* 82 F.3d 1362 (7th Cir.1996) (quoting *GASH Assocs. v. Village of Rosemont, Ill.,* 995 F.2d 726, 728–29 (7th Cir.1993) ("[GASH] has no claim independent of the state court's adverse decision. To put this differently, the injury of which GASH complains was caused *by* the judgment, just as in *Rooker, Feldman,* and *Ritter.* GASH did not suffer an injury out of court and then fail to get relief from state court; its injury came from the judgment[.]")). Like Dickie in the Seventh Circuit example mentioned previously, the plaintiffs came to this court only after an adverse ruling on the constitutional issue was rendered by the Louisiana Third Circuit. In fact, the briefs filed by the plaintiffs dissect the ruling and report its myriad flaws. In addition, the plaintiffs rely on the Third Circuit ruling to make defendants Johnson and Keller state actors for the purposes of Section 1983.[5] At bottom, the plaintiffs are asking

---

**3.** The other defendants adopted his line of attack at the 20 April 2000 hearing. The *Rooker–Feldman* doctrine as it applies to all defendants was extensively discussed at that hearing.

**4.** The plaintiffs ask this court to "[e]nter a declaratory judgment against defendants Johnson, Keller and Ieyoub, declaring that LSA–R.S. 15:1301 et seq., as *interpreted* to

apply to the plaintiffs, violates the Press and Speech Clauses of the First and Fourteenth Amendments." PLAINTIFFS' COMPLAINT at 9 (emphasis added). This requested relief requires a review of the state court decision.

**5.** Section 1983 applies only to state actors. *See* 42 U.S.C. § 1983. Johnson and Keller can only be state actors by virtue of their joint participation with the Louisiana state courts

this court to review and overturn the Louisiana Third Circuit ruling. This it cannot do.[6]

## CONCLUSION

For the foregoing reasons, this court denies the plaintiffs' motion, grants the defendant's motion and *sua sponte* dismisses the remaining declaratory judgment action against the other defendants. A separate judgment shall issue this date.

## JUDGMENT

Before the court are plaintiffs' motion for a preliminary injunction and consolidated trial on the merits and defendant Ieyoub's motion to dismiss the declaratory judgment action. Pursuant to reasons given in the Memorandum Opinion separately issued this date, plaintiffs' motion is DENIED and defendant's motion is GRANTED. *Sua sponte*, this court DISMISSES the remaining declaratory judgment action against the other defendants as well. Plaintiffs' complaint is, therefore, DISMISSED WITH PREJUDICE.

in enforcing an unconstitutional interpretation of the statute against the plaintiffs. This court would have to review the state court ruling to ascertain whether the state "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed that of the State." *American Manufacturers Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 52, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (quotation marks omitted). In essence, this joint participation theory of state action allows Section 1983 plaintiffs to attack an unconstitutional state law even when the actual case is ostensibly between private parties.

This joint participation theory—if allowed to prevail in this court in the instant case—would allow the plaintiffs to attack the validity of the state court ruling even when they would be unable to sue the state court directly under Section 1983 by virtue of *Rooker–Feldman*. Section 1983 state action doctrine does not trump a jurisdictional doctrine such as *Rooker–Feldman*.

**6.** Of course, this court does not reach the other issues raised at the hearing, including whether the various abstention doctrines bar consideration of the matter.